IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

FRATERNAL ORDER OF POLICE,
PENN-JERSEY LODGE 30,

Plaintiff,

v.

DELAWARE RIVER PORT AUTHORITY,

Defendant.

Civil No. 12-2170 (JBS/KMW)

**OPINION**

APPEARANCES:

Charles Thomas Joyce, Esq.
Lauren Frankel, Esq.
Spear Wilderman
1040 North Kings Highway
Suite 202
Cherry Hill, NJ 08034
    Attorney for Plaintiff Fraternal Order of Police, Penn-
    Jersey Lodge 30

William M. Tambussi, Esq.
William F. Cook, Esq.
Brown & Connery
360 Haddon Ave.
Westmont, NJ 08108
    Attorney for Defendant Delaware River Port Authority

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

     Plaintiff Fraternal Order of Police Penn-Jersey Lodge 30

("FOP") brought this action against Defendant Delaware River

Port Authority ("DRPA") to move the Court for a mandatory

injunction ordering the DRPA to submit to binding interest

arbitration[1] over the terms and conditions of employment for the patrol officers, corporals, and sergeants whom FOP represents and whom DRPA employs. This matter comes before the Court on DRPA's motion for summary judgment [Docket Item 12], asking the Court to deny FOP's request.[2] The Court heard oral argument on January 24, 2013.

The Court will deny DRPA's motion and grant FOP's request because this issue has been previously litigated in and decided by the New Jersey state courts. In 1999, litigation in New Jersey state courts between FOP and DRPA established that DRPA must submit to interest arbitration. Fraternal Order of Police, Penn-Jersey Lodge 30 v. Delaware River Port Authority, 323 N.J. Super. 444 (N.J. App. Div. 1999), certif. denied, 162 N.J. 663 (1999), cert. denied, 530 U.S. 1275 (2000) ("DRPA I"). In 2002, the Third Circuit held that DRPA I is entitled to preclusive effect on the issue of DRPA's collective bargaining obligations with police and firefighters under its interstate compact. Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d

---

[1] Interest arbitration refers to arbitration in collective bargaining negotiations involving police or fire personnel.

[2] The parties filed a joint letter [Docket Item 7] agreeing that their dispute is one of law, not fact, that fact discovery was unnecessary, and that Defendant DRPA would file a motion for summary judgment soon after filing its answer.

2

567 (3d Cir. 2002) ("DRPA II"). DRPA I and DRPA II mandate the outcome of this case: The parties must submit to arbitration because they are bound by collateral estoppel.

## II.  FACTUAL BACKGROUND

The DRPA is a bi-state agency created in 1932 that owns, operates, and secures various transportation facilities associated with the Delaware River, including the Benjamin Franklin Bridge, the Walt Whitman Bridge, the Commodore Barry Bridge, the Betsy Ross Bridge, the Port Authority Transit Corporation ("PATCO") High-Speed line, and the RiverLink Ferry System. (DRPA Statement of Facts ("SOF") ¶ 1.)[3] The DRPA employs 96 patrol officers, 25 sergeants, and 12 corporals. (DRPA SOF ¶ 2.)

In or around 1975, DRPA voluntarily recognized FOP Lodge 30 as the exclusive bargaining representative of DRPA patrol officers, and now DRPA recognizes FOP as the exclusive bargaining representative of rank-and-file officers, corporals, and sergeants. (DRPA SOF ¶ 3, 5.) Since 1975, the parties have

---

[3] At the motion for summary judgment stage, the Court must construe all facts in favor of the non-moving party, which is FOP in this instance. The Court cited statements from DRPA's Statement of Facts with which FOP agreed in its responsive statement of material facts [Docket Item 16].

negotiated a series of collective bargaining agreements. (DRPA SOF ¶ 4.) The most recent collective bargaining agreement commenced in 2005 and expired on December 31, 2009. (DRPA SOF ¶ 6.)

After the 2005-2009 collective bargaining agreement expired, the parties met on several occasions in 2010 to negotiate a successor contract, but their efforts did not succeed. (DRPA SOF ¶ 8.) On November 29, 2010, FOP took the position that the parties were at an impasse and should proceed to interest arbitration. (DRPA SOF ¶ 9.) On December 29, 2010, the DRPA advised the FOP of its belief that interest arbitration is not legally mandatory for the DRPA. (DRPA SOF ¶ 10.) In 2011 and early 2012, the parties' representatives met on several occasions to negotiate a new contract, but they were unsuccessful. (DRPA SOF ¶ 11.)

Plaintiff FOP then filed this action seeking a mandatory injunction ordering the DRPA to submit to binding interest arbitration. [Docket Item 1, Compl.]

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

4

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

**B. DRPA's Bi-State Compact**

In 1931, the State of New Jersey and the Commonwealth of Pennsylvania legislatively created the Delaware River Port Authority to develop the ports of Philadelphia and Camden and to operate bridges and provide mass transportation across the Delaware River. N.J. Stat. Ann. § 32:3-2 et seq.; Pa. Stat. Ann. tit. 36, § 3503 et seq. Under the Compact Clause of the United States Constitution, states may enter into agreements regarding matters of common concern provided they obtain the consent of Congress. U.S. Const. art. I, § 10, cl. 3. The United States Congress formally approved the DRPA Compact in 1932. DRPA II at 571. The construction of a bi-state compact that has been consented to by Congress pursuant to the Compact Clause presents a federal question. Cuyler v. Adams, 449 U.S. 433, 438 (1981).

The DRPA is a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey." N.J. Stat. Ann. § 32:3–2; Pa. Stat. Ann. tit. 36 § 3503. But it is not an "arm" of either state. Peters v. DRPA, 16 F.3d 1346, 1352 (3d Cir. 1994). Nor is it vested with attributes of state sovereignty. Id. at 1351-52. The DRPA's powers and duties are framed entirely by the Compact. DRPA II at 571. The Compact allows either state's legislature to grant the DRPA additional powers or impose on it additional duties by passing legislation that is "concurred in by the legislation of the other [state]." N.J. Stat. Ann. § 32:3–5; Pa. Stat. Ann. tit. 36 § 3503.

Article IV(e) of the Compact provides the DRPA Commissioners the right to "appoint, hire or employ . . . agents and employees, as it may require for the performance of its duties, by contract or otherwise, and fix and determine their qualifications, duties and compensation." N.J. Stat. Ann. § 32:3–5; Pa.Stat.Ann. tit. 36, § 3503. The DRPA Compact itself does not expressly grant DRPA employees collective bargaining rights. DRPA II at 571-72.  Nor does the Compact impose a duty on the DRPA's management to bargain collectively with unions. Id.

**C. Parties' Arguments**

The crux of this case is a legal dispute regarding how the DRPA compact should be interpreted.

Defendant DRPA argues that the DRPA need not participate in interest arbitration because the DRPA compact does not contain express language ordering it to do so. DRPA argues that the DRPA compact should be interpreted according to the express intent test, which holds that a bi-state entity is only subject to those laws which the creating states expressly discussed in the compact. As support for this argument, DRPA cites <u>Int'l Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Comm'n</u>, 311 F.3d 273 (3d Cir. 2002) ("<u>Local 542</u>"), in which the Third Circuit held that "[o]ur first and last order of business is interpreting the compact; we may not read into it language or intent that is simply not there." <u>Id.</u> at 280. The Third Circuit explained:

> Principles of statutory interpretation also require us to strictly construe surrenders of sovereignty. . . . [A] party wishing to make a claim of right or entitlement against a state must prove that the state has expressly relinquished that measure of sovereignty in terms too plain to be mistaken.

<u>Id.</u> at 280. DRPA thus argues that, since the DRPA compact does not incorporate the New Jersey and Pennsylvania collective

7

bargaining laws, it is not required to submit to interest arbitration.

Plaintiff argues that the proper test is not express intent, but rather the complementary and parallel legislation test. If both states have passed complementary and parallel legislation, then Plaintiff argues that such legislation applies to the DRPA. The DRPA compact allows either state's legislature to grant the DRPA additional powers or impose on it additional duties by passing legislation that is "concurred in by the legislation of the other [state]." N.J.Stat.Ann. § 32:3-5, Pa.Stat.Ann. tit. 36, § 3503. Both Pennsylvania and New Jersey have statutory procedures to be applied when collective bargaining between police or fire employees reaches impasse, and these procedures include interest arbitration. N.J. Stat. Ann. § 34:13A-16; 43 Pa. Stat. Ann. tit. § 217.4. FOP therefore argues that these statutes apply to the DRPA through the concurred-in clause because the statutes are similar. Plaintiff notes that New Jersey state courts have never embraced the express intent test for interpreting bi-state compacts.

In their briefing, both FOP and DRPA have thus raised questions regarding the appropriate test for interpreting the DRPA compact. As explained infra, the Court finds that the

8

question before the Court is actually quite narrow: The question
is whether a prior New Jersey state court case in which DRPA was
ordered to participate in interest arbitration with its police
union commands the same result because of issue preclusion in
this case. The Court finds, as did the Third Circuit in DRPA II,
that the prior New Jersey decision is entitled to preclusive
effect and, as a result, the Court will not address the bi-state
compact interpretation questions that the parties have raised.[4]

### D. Prior Litigation Between FOP and DRPA

In 1997, when collective bargaining negotiations between
FOP and DRPA failed, FOP commenced an action in New Jersey
Superior Court. The New Jersey trial court ruled that it had the
authority to order interest arbitration, but that it would first
order the parties to participate in mediation and then interest
arbitration, if the parties remained at impasse. DRPA appealed

---

[4] The Court also will not address the other arguments that
Plaintiff outlined in its Complaint, such as its argument that
the DRPA compact accords the DRPA law enforcement officers all
the powers that New Jersey and Pennsylvania officers enjoy,
including the right to demand collective bargaining arbitration.
FOP also argues a breach of contract claim because, it argues,
the most recent collective bargaining agreement mandated that
DRPA and FOP must follow an impasse resolution procedure
outlined in the collective bargaining agreement. The Court has
not addressed these arguments.

9

to the New Jersey Appellate Division and argued that imposition of mediation and arbitration did not accord with the DRPA compact. The Appellate Division applied the complementary and parallel legislation test and affirmed the trial court's ruling, holding that "the public policy of both states, articulated in parallel statutes that are substantially similar but do not specifically include defendant, is applicable to a bi-state agency, although the statutory scheme of each state is not." DRPA I at 455. The Appellate Division examined New Jersey's and Pennsylvania's legislation governing public employer-employee disputes and determined that "the New Jersey and Pennsylvania statutes are complementary and parallel." Id. at 459. The Appellate Division therefore "affirm[ed] the order requiring the DRPA to mediate and, if necessary, submit to public interest arbitration its contract dispute with Lodge 30." Id. at 460.

DRPA appealed DRPA I to both the New Jersey Supreme Court and the United States Supreme Court, but the New Jersey Supreme Court denied certification, Fraternal Order of Police v. Delaware River Port Auth., 162 N.J. 663 (1999), and the Supreme Court denied certiorari, 530 U.S. 1275 (2000).

In 2001, DRPA brought a declaratory judgment action in federal court in the Eastern District of Pennsylvania seeking

10

resolution as to whether DRPA must recognize and bargain collectively with the FOP. The district court held that "because the legislatures of the two states which created the DRPA, New Jersey and Pennsylvania, have not enacted legislation that expressly imposes upon the DRPA the duty to recognize and bargain collectively with the exclusive bargaining agent of its police officers, the DRPA is not obligated to bargain with the Unions in this case." Delaware River Port Authority v. Fraternal Order of Police, 135 F. Supp. 2d 596, 599 (E.D. Pa. 2001).

FOP appealed to the Third Circuit, which reversed the district court's decision because DRPA I was entitled to preclusive effect. The Third Circuit held that DRPA I satisfied all the collateral estoppel elements, has not been questioned by New Jersey state courts, and was not inequitable. DRPA II at 574. The Third Circuit emphasized that DRPA I was entitled to preclusive effect even though the New Jersey state court addressed an issue of federal law:

> The unions and DRPA agreed to litigate this issue of federal law in New Jersey courts. If those courts answered federal questions erroneously, it remained for state appellate courts, and ultimately for the United States Supreme Court, to correct any mistakes. Error in a prior judgment is not a sufficient ground for refusing to give it preclusive effect.

Id. at 576. The Third Circuit stated, "Were we sitting on the New Jersey courts, we might have interpreted the respective statutes and the DRPA's obligations to its patrol officers differently. But we may not reconsider the New Jersey judgment." Id. at 577. The Third Circuit emphasized that the Eastern District of Pennsylvania court "should have given preclusive effect to the [DRPA I's] holding New Jersey and Pennsylvania law enforcement labor laws apply to the DRPA." Id. at 577.[5]

**E. Issue Preclusion Applies In This Case**

Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on

---

[5] On April 7, 2006, FOP obtained an order from the New Jersey Superior Court that, inter alia, ordered DRPA to agree upon a neutral interest arbitrator and to commence interest arbitration. (Docket Item 1-2 at 69; Compl. Ex. F.) The April 7, 2006 order also enjoined DRPA to rescind changes in health care benefits to FOP-represented employees. On May 22, 2006, the New Jersey Superior Court issued an order dissolving the mandatory restraints contained in the April 7, 2006 order because the parties had entered into an interim agreement regarding health care benefits. (Docket Item 1-2 at 72; Compl. Ex. G.) The May 22, 2006 order also specified a timeline for selection of a neutral arbitrator to serve on the arbitration panel. At oral argument before this Court on January 24, 2013, the parties disputed the significance and meaning of these two New Jersey Superior Court orders. While the Court notes these orders as part of the litigation history between these parties, the Court has not relied upon them in making its decision.

a cause of action involving a party or one in privity. DRPA II
at 572. A federal court looks to the law of the adjudicating
state to determine preclusive effect. Greenleaf v. Garlock,
Inc., 174 F.3d 352, 357 (3d Cir. 1999).

In New Jersey, when a judgment of a court of competent
jurisdiction determines a question in issue, the judgment estops
the parties and privies from relitigating the same issue in a
subsequent proceeding. City of Plainfield v. Pub. Serv. Elec. &
Gas Co., 82 N.J. 245, 258 (1980). New Jersey courts apply a
five-pronged test to determine whether collateral estoppel
should bar relitigation of an issue: (1) the issue must be
identical; (2) the issue must have actually been litigated in a
prior proceeding; (3) the prior court must have issued a final
judgment on the merits; (4) the determination of the issue must
have been essential to the prior judgment; and (5) the party
against whom collateral estoppel is asserted must have been a
party or in privity with a party to the earlier proceeding. In
re Estate of Dawson, 136 N.J. 1, 20 (1994).

In this case, all of the elements of New Jersey's
collateral estoppel test are satisfied. First, the parties have
previously litigated identical issues. In DRPA I, the parties
litigated the identical issue of whether DRPA must submit to

arbitration. In DRPA II, they in fact litigated the identical issue of whether collateral estoppel applies binding DRPA and FOP to the holding in DRPA I, namely, that the DRPA and FOP must submit to interest arbitration. Second, the parties actually litigated the question of whether arbitration is mandatory in DRPA I and the question of whether collateral estoppel applies to that holding in DRPA II. Third, both prior cases involved final judgments on the merits. Fourth, these issues were essential to the prior judgments. And fifth, the parties were both parties to the previous proceeding.

DRPA II noted that DRPA I had been decided less than three years before DRPA II came before the Third Circuit. Id. at 574. In this case, fourteen years have passed since the 1999 decision. But none of DRPA's arguments in this case, discussed infra, merit an outcome different from the Third Circuit's judgment in DRPA II, due to the application of well-established principles of collateral estoppel.

DRPA argues that the same-parties requirement of collateral estoppel is not satisfied because "the FOP unit in this case is a completely different party in interest than the prior unit." (DRPA Summ. J. Br. at 16.) DRPA argues that the FOP unit in 1999 "consisted solely of DRPA patrol officers" and "did not include

14

superior officers such as corporals and sergeants, nor did it include any PATCO officers." (Id. at 16-17.)

The Third Circuit addressed this issue in DRPA II and held that, although FOP's composition in DRPA I was slightly different compared to DRPA II, "[f]or the purposes of issue preclusion, any distinction between this litigation and [DRPA I] is legally insignificant." Id. at 574. In DRPA I, the FOP plaintiff represented patrol officers. In DRPA II, the FOP plaintiff also represented the "superior officers." Id. at 575. The DRPA had voluntarily recognized the patrol officers' bargaining representative, but not the superior officers' representative. The Third Circuit noted that DRPA I "held the unions' right to negotiate was statutory, not contractual, so the 'voluntary' recognition issue was irrelevant to its judgment." Id. at 575. In other words, the Third Circuit held that, because DRPA I's holding was premised on the DRPA I court's interpretation of DRPA's statutory collective bargaining obligations, changes in FOP's membership did not preclude collateral estoppel. The parties have already litigated the issue of whether changes in the FOP's composition impact the privity element; they are bound by the Third Circuit's ruling

15

that changes in the FOP's composition are "insignificant" for
issue preclusion purposes.

DRPA also argues that the Third Circuit's ruling in DRPA II
"was limited to the set of facts before it" and that "the fact
that the Third Circuit concluded in 2002 that the 1999 Appellate
Division had preclusive effect does not bind this court to the
same result." (DRPA Summ. J. Br. at 20.) This Court disagrees.
The DRPA II court concluded that, "[u]nder this set of facts, we
must give effect to [DRPA I's] determination. . . ." Id. at 575.
The Court infers that the Third Circuit's use of the phrase
"[u]nder this set of facts" in DRPA II reflects the limited
extent of the Third Circuit's ruling, which is that DRPA I
merits preclusive effect because DRPA I considered the same
issue with the same parties, not because the Third Circuit would
have conducted the same legal analysis.

DRPA further asserts that "the finality of the prior [DRPA
I] judgment is unclear" because "the matter under review in 1999
was arguably interlocutory because the trial court's order did
not specifically order the parties to engage in interest
arbitration, but only to engage in mediation to see if the
matter could be resolved short of interest arbitration." (DRPA
Summ. J. Br. at 17.) This argument lacks merit. First, in DRPA

16

<u>II</u>, the Third Circuit held that "[t]here was a final judgment on the merits" regarding DRPA's obligations to engage in collective bargaining. <u>DRPA II</u> at 574. Moreover, the Court finds that <u>DRPA</u> <u>I</u> clearly addressed arbitration, not just mediation. The Appellate Division stated:

> [W]e must decide whether the [DRPA] is required to submit to mediation or public interest arbitration in accordance with the labor laws of this State governing collective bargaining for public employees. We hold that it does and affirm the order requiring the DRPA to mediate and, if necessary, submit to public interest arbitration its contract dispute with its police officers.

<u>DRPA I</u> at 446. This language clearly orders both mediation and, if mediation is unsuccessful, arbitration.[6]

Essentially, the parties are bound by both <u>DRPA I</u> and <u>DRPA</u> <u>II</u>. The 1999 case determined that FOP and DRPA must mediate

---

[6] <u>DRPA I</u> notes that the trial court judge "concluded he had the authority to order interest arbitration. Nevertheless, he did not do so." <u>DRPA I</u> at 450. Instead, the trial court ordered mediation and the order recited that "if the parties remain at impasse the Court can and will order binding interest arbitration." <u>DRPA I</u> at 450. The trial court did not initially order arbitration, but the determination that the court could and would, if necessary, order arbitration was an aspect of its final judgment. The trial court's decision to begin with mediation does not impact the fact that it finally and conclusively decided that the parties are legally required to participate in interest arbitration. The Appellate Division clearly reached the merits of the issue of whether the parties could be ordered to public interest arbitration, notwithstanding its observation that the trial judge had not finally ordered the parties to public interest arbitration. <u>DRPA I</u>, 323 N.J. Super at 452 n.4.

and/or arbitrate their labor disputes. The 2002 case determined that the parties are estopped from arguing otherwise in federal court because collateral estoppel applies. That ruling necessarily includes a determination that the DRPA I judgment was a final judgment on the merits. The parties have already litigated the issue of whether collateral estoppel applies and the Third Circuit's determination is conclusive.

DRPA also argues that "the circumstances informing the Third Circuit's 2002 analysis have completely changed" because the underlying arbitration statutes "have substantially changed." (DRPA Summ. J. Br. at 19.) DRPA notes that, since 2002, the New Jersey interest arbitration procedure has been amended to include, inter alia, an additional statutory factor that the arbitrator must consider, a two-percent cap on interest arbitration awards, and a different time frame and scope of issues for arbitration. (DRPA Summ. J. Br. at 19.) This argument is unpersuasive. DRPA I specifically held that "the public policy of both states, articulated in parallel statutes, . . . is applicable to a bi-state agency, although the statutory scheme of each state is not." DRPA I at 455. In addition, the DRPA I court emphasized:

> Although we discern some differences in each state's
> legislation governing public employer-employee labor

18

> disputes, we conclude that these differences do not
> negate the basic public policy of each state that
> their public employees are entitled to engage in
> collective negotiations with their employer.

DRPA I at 459. In the present case, the underlying New Jersey

statute may have changed in the particulars of the arbitration

process, but the underlying public policy entitling police and

firefighter public employees to engage in collective bargaining

mechanisms, including binding interest arbitration, in exchange

with forbidding strikes by police and firefighters, has not

changed. That public policy was the basis of the DRPA I holding.

The changes in New Jersey's collective bargaining laws do not

impact the Court's issue preclusion analysis.

DRPA suggests that both federal and state law interpreting

bi-state compacts changed after DRPA II. DRPA notes that the

DRPA II court supported its holding, in part, by stating that

DRPA I "was decided less than three years ago and New Jersey

courts have not called it into question in the interim." DRPA II

at 574. DRPA now argues that New Jersey courts have questioned

the legal test used in DRPA I. To support this argument, DRPA

cites an unpublished New Jersey Appellate Division case,

Dittrich v. Port Auth. of New York & New Jersey, 2012 WL 4662213

(N.J. App. Div. Oct. 4, 2012), in which the threshold question

was whether Port Authority of New York and New Jersey, which was

19

created pursuant to a bi-state compact, was subject to the New
Jersey Open Public Records Act. The Dittrich court noted that,
under New Jersey law, a bi-state agency may be subject to New
Jersey law if both states have complementary or parallel
legislation. Id. at *3. But the Dittrich court held that the
complementary and parallel legislation test was not satisfied
because

> The fact that similarities exist in the New York and
> New Jersey laws does not satisfy the criterion for the
> application of unilateral state action by New Jersey.
> . . . [T]here must also be some agreement by both
> states that the law of one state will apply. Indeed .
> . ., the expression of such intent by one legislature
> [is] insufficient in the absence of laws specifying
> that both states intended that local law would govern
> an area relevant to their compact.

Dittrich at *3. The Dittrich court did not apply the Open Public
Records Act to the bi-state entity.  DRPA argues that Dittrich
shows that New Jersey courts are no longer applying the
complementary and parallel legislation test that was applied in
DRPA I.

Two months after Dittrich was decided, however, the New
Jersey Appellate Division decided Santiago v. New York & New
Jersey Port Auth., 57 A.3d 54 (N.J. App. Div. 2012), in which
the court held that "the agency may be subject to complementary

20

or parallel state legislation." Id. at 58.[7] Even if, arguendo, Dittrich announced a shift in New Jersey bi-state compact jurisprudence, the Santiago court did not follow that shift. And Dittrich was an unpublished case, while Santiago was published. Moreover, the New Jersey Supreme Court has cited DRPA II with approval and has held that the complementary and parallel legislation test applies specifically to the DRPA. In Ballinger v. Delaware River Port Auth., 172 N.J. 586 (2002), the New Jersey Supreme Court "appl[ied] the Third Circuit's [DRPA II] holding and reaffirm[ed] our prior conclusion that the 'complementary or parallel' legislation test is to be applied in determining whether the subsequent laws of one compacting state will apply to a bi-state agency." Id. at 595-96.

In addition, in DRPA II, the DRPA made a similar argument about the state of New Jersey law. DRPA "dispute[d] that New Jersey courts always disavowed the express intent requirement" and argued that there was an "abrupt departure" in recent New Jersey jurisprudence allowing statutes not expressly applying to bi-state agencies to bind the entity to a certain public policy.

---

[7] The Santiago court assumed that the bi-state entity was subject to the legislation at issue, without determining whether the legislation was actually parallel, and dismissed the plaintiff's claims for failure to comply with the agency's mandatory pre-suit notification requirements.

DRPA II at 575 n.13. The Third Circuit held that "it is not our task to correct 'departures' in New Jersey jurisprudence." Id. This Court has neither the responsibility nor the authority to resolve any purported conflicts within New Jersey jurisprudence. Even if, arguendo, Dittrich disavows DRPA I's holdings regarding bi-state compact interpretation, the Court cannot overturn DRPA I, a published New Jersey Appellate Division case, on the basis of an unpublished New Jersey Appellate Division case that appears inconsistent with New Jersey Supreme Court jurisprudence and with a more recent published New Jersey Appellate Division case, i.e., Santiago. The Court finds that there is no basis for disregarding DRPA I and DRPA II based on recent changes in New Jersey law.

    We next examine DRPA's argument that federal law has also changed. Several months after deciding DRPA II, the Third Circuit analyzed a different bi-state compact and held that, absent express language in the compact, the court could not infer that state statutes applied to the bi-state entity. International Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Commission, 311 F. 3d 273 (2002) ("Local 542"). Local 542 involved a bi-state compact that, unlike the DRPA compact, did not have any concurred-in

22

language, i.e., language allowing either state's legislature to
grant the bi-state entity additional powers or impose on it
additional duties by passing legislation that is concurred in by
the legislation of the other state. The Local 542 court held
that the absence of concurred-in language indicated that the
founding states "have not exhibited any express intent to amend
the Compact. . . ." and that "the Compact does not contain any
provision enabling either state to modify it through legislation
'concurred in' by the other. . . ." Id. at 280. The court
explained:

> [T]he "concurred in" provision introduces the issue
> of, and mechanism for, modification, without which
> there is absolutely no authority for, let alone
> specific means of accomplishing, a modification of the
> Compact by passing similar laws. Thus the absence of
> the concurred in language is fatal.

Id. at 280.

After Local 542, it was clear that the two states could not
modify a bi-state compact lacking a concurred-in clause by
passing similar legislation. It was less clear whether a bi-
state compact that contained concurred-in language was also
subject to the express intent test or whether it could be
modified through the complementary and parallel legislation
test. The Local 542 court stated, "[w]e do not need to reach the
issue of whether the presence of 'concurred in' language would

23

be a sufficient demonstration of intent nor whether Congress
would also have to consent to any modifications." Id. at 280
n.7. But the Local 542 court noted that "the New Jersey
complementary or parallel standard appears to be based on a
misinterpretation of compact law." Id. at 280. After Local 542,
federal district courts questioned the complementary and
parallel test espoused in DRPA I, even when interpreting the
DRPA compact. See e.g., Martin v. Port Auth. Transit Corp., CIV.
09-CV-3165-NLH/JS, 2010 WL 1257730, *4 (D.N.J. Mar. 25, 2010)
(holding that "the New Jersey complementary and parallel
standard no longer appears to be good law in this Circuit" and
dismissing New Jersey Law Against Discrimination claim against
PATCO because "neither New Jersey's, nor Pennsylvania's anti-
discrimination laws appear to mention the DRPA").

The Third Circuit in Local 542 specifically discussed and
did not overrule DRPA II; instead Local 542 noted DRPA II and
explained:

> The parties to [DRPA II] were in privity with the
> parties in a case resolved in the New Jersey courts;
> we were therefore required to give preclusive effect
> to the New Jersey court's ruling regarding the
> complementary or parallel test. In dicta, however, we
> noted, "Were we sitting on the New Jersey courts, we
> might have interpreted the respective statutes and the
> DRPA's obligations to its patrol officers differently.
> But we may not reconsider the New Jersey judgment."

Id. at 278-79. Local 542 acknowledged the prior decision in DRPA
II and held that issue preclusion compelled the outcome in DRPA
II. Indeed, DRPA II was all about issue preclusion. The Third
Circuit emphasized that issue preclusion applies even though the
Third Circuit might not have made the same decision that the New
Jersey courts made. The parties, and this Court, remain bound by
DRPA I and DRPA II.[8]

---

[8] Local 542 involved a bi-state compact that did not have any
concurred-in language. In hip Heightened Independence &
Progress, Inc. v. Port Auth. of New York & New Jersey, 693 F.3d
345 (3d Cir. 2012), the Third Circuit considered a bi-state
compact that had a concurred-in clause. Defendant argues via
letter brief [Docket Item 19], that the hip court held that the
express intent test applies, but hip does not make that
conclusion. In hip, the Third Circuit did not specifically
determine whether a bi-state compact with a concurred-in clause
would be subject to the express intent test because the
plaintiffs, who sought to make New Jersey state law claims, did
not assert that complementary and similar legislation existed in
New York. The court stated "there is no dispute that the New
Jersey laws relied upon by Plaintiffs do not purport to regulate
the Authority, nor do Plaintiffs contend that there is an
implied agreement based on parallel legislation to amend the
compact." Id. at 357. The court's ruling was based on the fact
that the bi-state authority is an "autonomous entity [that]
cannot be unilaterally regulated by New Jersey." In other words,
the hip court did not address the question of whether the
express intent test or the complementary and parallel
legislation test applies because there was no assertion that
both states had complementary and parallel legislation.
Regardless, the issue in the present case is not which test to
apply; the issue is whether collateral estoppel bars
relitigation of the parties' collective bargaining obligations.
The Court finds that it does.

DRPA also argues that a collateral estoppel exception applies. DRPA cites § 28 of the Restatement (Second) of Judgments, in which the Restatement describes an exception based upon on intervening change in the law:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . . (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws

Restatement (Second) of Judgments § 28 (1982). Section 28(2)(a) clearly does not apply because this action is clearly related to DRPA I and DRPA II; the Court will focus on § 28(2)(b).

The Third Circuit has explained that "Section 28(2)(b) prevents unfair invocation of collateral estoppel only if a later action involves a 'different demand' than that presented in the first action." O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1069 (3d Cir. 1991).[9] While the matter of DRPA's collective

---

[9] The O'Leary court noted that "§ 28(2)(b) is intended to avoid the inequity that would result if collateral estoppel were applied in the regulatory context, preventing application of changes in the law to certain individuals." Id. at 1070. The Restatement includes examples such as changes in tax laws or changes in liquor licensing laws, Restatement (Second) of

bargaining obligations has come before this Court and the DRPA I
and DRPA II courts in the context of bargaining over different
contracts, the "demand" in each action remains the same: namely
a judgment specifying whether DRPA must submit to interest
arbitration with FOP. The Third Circuit has specifically held
that "§ 28(2)(b) does not stand for the proposition that an
issue, once litigated and resolved, may be reopened whenever the
governing law changes or clarifies." O'Leary at 1069. The
O'Leary court explained its rationale: "Such a broad exception
would swallow the general rule, greatly undermining the twin
goals of collateral estoppel—the avoidance of repetitive
litigation and the promotion of finality of judgments." Id. at
1069.

Including this case, DRPA has now litigated the question of
whether it must submit to arbitration with the FOP three times.
The Court is mindful of the rationale articulated in O'Leary:
Courts have an interest in avoiding repetitive litigation and
promoting final judgments. The Third Circuit explained in DRPA
II that it might not have reached the same outcome as the DRPA I

Judgments § 28 comment c, at 276-77, (1982), none of which are
applicable here.

court, but the <u>DRPA I</u> decision must be honored. The Court makes the same ruling here.

## IV.   TERMS OF ARBITRATION

There is nothing more than a metaphysical doubt that the parties have reached impasse. The collective bargaining agreement expired more than three days ago, on December 31, 2009. Negotiations did not achieve a new agreement. On November 29, 2010, the FOP took the position that the parties were at impasse in negotiations and, therefore, that interest arbitration was necessary. (DRPA SOF ¶ 9.) The parties agree that in 2011 and early 2012, the parties' representatives met several times to negotiate a new contract, but they were unsuccessful. (DRPA SOF ¶ 11.) On January 24, 2013, the Court held oral argument and encouraged the parties to negotiate a resolution. The Court declared that it would not issue a decision for 14 days, with the hopes that the parties would reach agreement. The parties have not advised the Court of a resolution and the Court has waited past the 14-day deadline. As explained above, DRPA is collaterally estopped from denying FOP's right to collective bargaining, including arbitration.

Given that the parties are at impasse, the Court will order interest arbitration.

Having decided that the parties must participate in interest arbitration, the Court is now confronted with the question of what the arbitration terms and procedures should be. While both DRPA I and DRPA II ordered arbitration, neither case specified the terms and procedures that should govern the arbitration. The Court cannot look to the New Jersey and Pennsylvania statutes because the DRPA I court held that the parties were bound by the public policies underlying the statutes, not the specific statutory terms.

The parties are not in agreement that the last collective bargaining agreement, which expired December 31, 2009, continues in effect. There is no evidence that the parties have agreed to a temporary extension.[10] If that contract had been extended, its Impasse Resolution Procedure would have required presenting this matter through that process, including the possible convening of a panel whose members are appointed by the parties under Article

---

[10] DRPA states that the most recent Collective Bargaining Agreement expired on December 31, 2009. (DRPA SOF ¶ 7.) FOP alleges that "[a]t no time has the DRPA indicated that it does not consider itself bound by the terms of this Agreement." (FOP SOF ¶ 49.) In its Reply, DRPA did not agree with this statement. (DRPA Reply at 7 ¶ 49.)

567 of 32 PageID: 567

XXXV thereof.[11] Neither party has asked this Court to compel
compliance with the Impasse Resolution Procedure of the expired
contract.

When the parties last participated in arbitration in 2006,
DRPA developed a streamlined "Proposed Terminal Procedure" to
which FOP agreed. (Docket Item 1-2 at 64; Compl. Ex. E.) The
agreed-upon procedure called for a three-member arbitration
panel and provided that arbitration would cover those subjects
within the required scope of collective negotiations in New
Jersey and Pennsylvania, unless the parties agreed to submit
additional subjects. Such a procedure has much to commend itself

_____

[11]The parties' most recent contract, which expired in 2009,
contains an Impasse Resolution Procedure. (Docket Item 1-2 at
90; Compl. Ex. I, Art. XXXV.) Both parties acknowledged at oral
argument that the Impasse Resolution Procedure is unwieldy. For
example, if negotiations reach impasse, the parties submit lists
of the issues under negotiation and their position statements to
the DRPA Chief Executive Officer ("CEO"). If the CEO does not
make a compromise proposal or if either party wishes to proceed
further under the Impasse Resolution Procedure, then the parties
shall seek the advice of a panel. The panel must consist of the
DRPA's Chief Executive Officer, two Commissioners selected by
the DRPA Chairman, two Commissioners selected by the DRPA Vice-
Chairman, and three FOP members. The Impasse Resolution
Procedure contains few references to arbitration. It states that
"[u]nless an item is arbitrable in both creator states, DRPA
retains the right to impose new terms. . . . DRPA may impose new
terms as to any topic if FOP seeks binding interest
arbitration." [Docket Item 1-2 at 120.]

in defining the contours of the interest arbitration which is statutorily required.

The DRPA is precluded from failing to recognize the rights of collective bargaining, including interest arbitration for police employees, which are implicit in the DRPA Compact. The parties are therefore required, in the first instance, to confer and attempt to agree on the procedure their interest arbitration will follow. To breathe reality into the Compact right of interest arbitration for these police employees, the parties must formulate the procedural vehicle that contains the commonly understood features of interest arbitration for police employees. The Court gives this task to the DRPA and the FOP in the first instance.

If the parties are unable to agree[12] upon the procedure for carrying out the Compact's mandate of interest arbitration for police employees after impasse, then there will be no alternative but for the Court to do so, after a hearing, upon request of either party.

---

[12] The parties will have a period of thirty (30) days from entry of the Order in which to define the procedural contours of the interest arbitration process. Failing same, unless otherwise extended by Court Order, the parties will be deemed unable to mutually define the interest arbitration process.

**V. CONCLUSION**

    The Court finds that both <u>DRPA I</u> and <u>DRPA II</u> are entitled to preclusive effect and the parties are bound by collateral estoppel to resolve their collective bargaining impasse. The Court will deny DRPA's motion for summary judgment and will grant FOP's request for an order mandating that the parties must participate in interest arbitration.


<u>**February 13, 2013**</u>           <u> **s/ Jerome B. Simandle**   </u>
Date                           JEROME B. SIMANDLE
                                Chief U.S. District Judge