IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

FRATERNAL ORDER OF POLICE,
PENN-JERSEY LODGE 30,

                    Plaintiff,

        v.

DELAWARE RIVER PORT AUTHORITY,

                    Defendant.

Civil No. 12-2170 (JBS/KMW)

**OPINION**

APPEARANCES:

Charles Thomas Joyce, Esq.
Lauren Frankel, Esq.
Spear Wilderman
1040 North Kings Highway
Suite 202
Cherry Hill, NJ 08034
        Attorney for Plaintiff Fraternal Order of Police, Penn-
        Jersey Lodge 30

William M. Tambussi, Esq.
William F. Cook, Esq.
Brown & Connery
360 Haddon Ave.
Westmont, NJ 08108
        Attorneys for Defendant Delaware River Port Authority

**SIMANDLE**, Chief Judge:

I.    **INTRODUCTION**

        The Court previously issued an Opinion and Order [Docket

Items 22 & 23] mandating that Defendant Delaware River Port

Authority ("DRPA") must participate in binding interest

arbitration with Plaintiff Fraternal Order of Police Penn-Jersey

Lodge 30 ("FOP") regarding the terms and conditions of FOP members' employment. The parties asked the Court via letter [Docket Item 27] to resolve certain disputes regarding the interest arbitration procedure.

The principal issue is which disputes the Court and the arbitrator must decide, respectively. The Court has decided substantive arbitrability questions, i.e., which issues which must be submitted to arbitration, but the Court will not impose procedural parameters. For the reasons discussed below, the Court therefore orders: (1) the parties shall arbitrate healthcare premium contributions; it is for the arbitrator to determine whether such contributions are capped by law; (2) the parties shall arbitrate wages without a court-imposed salary cap; it is for the arbitrator to determine whether wage increases are capped by law; (3) the Court declines to decide whether the requirement to arbitrate benefit contributions and wages extends beyond the collective bargaining agreement presently at issue; (4) DRPA may preserve its objection specifying that it does not consent to interest arbitration and reserves the right to raise this issue on appeal; (5) the Court will neither order the arbitrator to consider nor prohibit the arbitrator from considering salaries of private officers and other DRPA employees; (6) the Court will not impose a cap on

2

arbitrator fees and will not mandate a timeline for issuance of the arbitrator's decision; the DRPA and Lodge 30 have indicated they will reach mutual agreement on the parameters of arbitrator's fee and deadline.

## II. BACKGROUND

The Court briefly summarizes this case's background and incorporates the February 13, 2013 Opinion [Docket Item 22] for more detail. See, generally, Fraternal Order of Police, Penn-Jersey Lodge 30 v. Delaware River Port Auth., Civ. 12-2170 (JBS/KMW), --- F. Supp. 2d ---, 2013 WL 592135 (D.N.J. Feb. 13, 2013) ("DRPA III").

The State of New Jersey and the Commonwealth of Pennsylvania created the Delaware River Port Authority via bi-state compact to develop the ports of Philadelphia and Camden and to operate bridges and provide mass transportation across the Delaware River. N.J. Stat. Ann. § 32:3-2, et seq.; Pa. Stat. Ann. tit. 36, § 3503, et seq. The United States Congress approved the DRPA Compact. The DRPA's powers and duties are framed entirely by the Compact. Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 571 (3d Cir. 2002) ("DRPA II"). The Compact allows either state's legislature to grant the DRPA additional powers or impose on it additional

3

duties by passing legislation that is "concurred in by the legislation of the other [state]." N.J. Stat. Ann. § 32:3-5; Pa. Stat. Ann. tit. 36 § 3503.

The DRPA Compact itself does not expressly grant DRPA employees collective bargaining rights. DRPA II, 290 F.3d at 571-72.  Nor does the Compact impose a duty on the DRPA's management to bargain collectively with unions. Id. DRPA voluntarily recognizes FOP as the exclusive bargaining representative of rank-and-file officers, corporals, and sergeants.

The parties previously litigated the question of whether they must arbitrate their labor disputes. In 1999, New Jersey state courts ordered DRPA to submit to interest arbitration. Fraternal Order of Police, Penn-Jersey Lodge 30 v. Delaware River Port Auth., 323 N.J. Super. 444 (N.J. App. Div. 1999), certif. denied, 162 N.J. 663 (1999), cert. denied, 530 U.S. 1275 (2000) ("DRPA I"). The DRPA I court applied the complementary and parallel legislation test for interpreting bi-state compacts and held that "the public policy of both states, articulated in parallel statutes that are substantially similar but do not specifically include defendant, is applicable to a bi-state agency, although the statutory scheme of each state is not." Id. at 455. In addition, the DRPA I court emphasized:

4

> Although we discern some differences in each state's legislation governing public employer-employee labor disputes, we conclude that these differences do not negate the basic public policy of each state that their public employees are entitled to engage in collective negotiations with their employer.

Id. at 459. Essentially, DRPA I held that, although the specifics of each State's arbitration statutes do not apply, the policy of entitling police and firefighters to binding interest arbitration of the terms and conditions of employment, in exchange for the no-strike requirement for police and firefighters of both states, does apply.

Three years later, the Third Circuit held that DRPA I is entitled to preclusive effect on the issue of DRPA's collective bargaining obligations with police and firefighters, even though the Third Circuit may not have conducted the same analysis. Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567 (3d Cir. 2002) ("DRPA II").

After DRPA II, the Third Circuit stated that the complementary and parallel legislation test "appears to be based on a misinterpretation of compact law" and, instead, espoused the express intent test, which looks to the express language of the bi-state compact and any relevant state statutes. Int'l Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Comm'n, 311 F.3d 273, 280 (3d Cir. 2002). The Local

542 court did not, however, overrule DRPA II, and instead noted that "[t]he parties to the [DRPA II] litigation were in privity with the parties in a case resolved in the New Jersey courts; we were therefore required to give preclusive effect to the New Jersey court's ruling regarding the complementary or parallel test." Id. at 278.

Essentially, the parties are bound by both DRPA I and DRPA II: DRPA I established that FOP and DRPA must resolve their labor disputes through binding interest arbitration regarding terms and conditions of employment; DRPA II established that these parties are estopped from arguing otherwise in federal court because collateral estoppel applies.

The parties' last collective bargaining agreement ("CBA") expired December 31, 2009 and the parties were unable to negotiate a successor agreement. FOP brought this action against DRPA seeking an injunction ordering DRPA to submit to binding interest arbitration over the terms and conditions of employment for FOP's members.

On February 13, 2013, after summary judgment briefing, the Court determined that the parties were at a three-year impasse and entered an Order [Docket Item 23] granting FOP's request for a mandatory injunction ordering DRPA to submit to arbitration; directing DRPA "to participate in binding interest arbitration

6

with FOP to determine the terms and conditions of employment for the patrol officers, corporals, and sergeants whom FOP represents and whom DRPA employs"; ordering the parties "to confer and seek to agree upon the procedural terms for interest arbitration"; and, if the parties could not reach agreement, permitting either party to apply to the Court to determine the necessary arbitration procedure. The basis of this Court's decision was collateral estoppel; the Court did not apply either the complementary and parallel or the express intent test.

After the Court issued its February 13, 2013 Opinion and Order, the DRPA submitted a letter [Docket Item 24] asking the Court to clarify whether its February 13, 2013 Order was a final judgment for appeal purposes, given that the Order noted the Court's continuing jurisdiction to resolve arbitration issues. The Court held a teleconference and issued an Order on March 6, 2013 [Docket Item 26] clarifying that the Court's February 13, 2013 Order did not constitute a final judgment and allowing the parties until March 29, 2013 to agree upon an arbitration process.

After concluding their negotiations, the parties submitted a letter [Docket Item 27] jointly requesting the Court's assistance to resolve certain disputes regarding the arbitration

process. The Court established a briefing schedule [Docket Item 29] and heard oral argument on May 31, 2013.

Procedurally, this Opinion and Order addresses the remaining issues that the parties have brought to the Court's attention pertaining to the scope of the court-ordered binding interest arbitration. The Order of February 13, 2013, together with the present Order, constitute the terms of a mandatory injunction. As an injunctive order, in accordance with Rule 65(d), Fed. R. Civ. P., its terms must be sufficiently precise that a party knows what it is required to do, so that its compliance can be determined.

## III. ANALYSIS

As an initial matter, the Court emphasizes that binding interest arbitration has already been ordered and the Court is not revisiting that order. DRPA argues that the Court cannot order arbitration terms because the DRPA Compact does not speak to specific arbitration terms and therefore, under the express intent test, the Court cannot impose terms. DRPA states, "Since the DRPA Compact does not speak to any of the [disputed issues], the Court cannot impose either State's law . . . . The parties must be left to resolve matters by themselves by agreement." (Docket Item 31, DRPA Br. at 10.) DRPA's argument essentially

seeks revocation of the Court's injunction ordering arbitration because the DRPA Compact does not mandate arbitration terms.[1] The Court explained, however, in DRPA III, that the express intent test was not the basis of the Court's arbitration order. The DRPA Compact does not mandate DRPA's or FOP's participation in arbitration; it would be incongruous for the Court to expect the Compact to dictate arbitration terms when it does not mandate arbitration. The requirement of participating in "binding interest arbitration over the terms and conditions of employment" means something, and in the absence of two parties who see eye-to-eye on that meaning, it falls to the Court to define it.

DRPA also argues that the complementary and parallel test prevents the Court from ordering terms: "[s]ince the laws of the two states are not complementary and parallel . . ., the Court should not render any order at all . . . Rather, the only appropriate way to resolve these disputed procedural issues is by negotiations between the parties." (DRPA Reply at 1.)

---

[1] DRPA's argument that the Court should not order arbitration when the laws of New Jersey and Pennsylvania differ is no different than its argument at summary judgment briefing that it should not have to submit to arbitration. The laws of New Jersey and Pennsylvania were not identical when the DRPA I court issued its decision, nor when DRPA II found collateral estoppel. The Court will not vacate its order directing mutual participation in arbitration.

9

As with any dispute, the parties are welcome to negotiate an agreement. But, as the Court stated in DRPA III, "[t]here is nothing more than a metaphysical doubt that the parties have reached impasse." DRPA III, 2013 WL 592135 at *10. At oral argument regarding summary judgment, the Court exhorted the parties to reach a settlement and gave them weeks to do so. Thereafter, this Court's Order of February 13, 2013, directed the parties to confer and negotiate the procedural terms for their interest arbitration. The parties have not notified the court of any agreement to terms, over three years have passed since the last collective bargaining agreement expired, and these additional months for negotiations of this narrow issue of the contours of arbitration procedures have not produced agreement.

The issue presently before the Court is, essentially, what the arbitration terms and procedures should be for the binding interest arbitration. Resolving this issue is difficult because:

> While both DRPA I and DRPA II ordered arbitration, neither case specified the terms and procedures that should govern the arbitration. The Court cannot look to the New Jersey and Pennsylvania statutes because the DRPA I court held that the parties were bound by the public policies underlying the statutes, not the specific statutory terms.

DRPA III, 2013 WL 592135 at *10. While the arbitration mandate is clear, the framework for the arbitration process is

10

undefined. What is more clear, however, is the principle that the contours of interest arbitration are derived from the policies underlying the respective public bargaining statutes for police and firefighters in New Jersey and Pennsylvania.

The parties have agreed upon the bulk of the arbitration procedure[2], but six issues remain disputed: (1) whether healthcare premium contributions are subject to interest arbitration; (2) whether a two-percent cap found only in New Jersey law applies to base salary increases on an annual basis; (3) whether the arbitrator can consider the salaries of private employees or other DRPA employees; (4) whether there is a cap on arbitrator fees and what the cap should be; (5) the timeline for the arbitrator to issue a decision; and (6) whether the arbitration framework can include language specifying that this procedure is only for purposes of obtaining a successor agreement to the expired CBA, that DRPA does not consent to interest arbitration, and that DRPA reserves the right to contest the imposition of interest arbitration.

---

[2] The parties have agreed, for example, that the method of arbitration will be conventional in the sense that each side will make arguments and present evidence to the arbitrator, who will be empowered to accept, reject, or modify each proposal. In addition, the parties agreed that the arbitrator would have the power to mediate or assist in settlement discussions, to administer oaths and exercise subpoena power, to question witnesses, and to relax certain procedures with the parties' consent. [Docket Item 30, Pl. Br. at 3-4.]

In regards to the contested language, the DRPA may note that it does not consent to interest arbitration. Such language merely states the obvious because DRPA is enjoined to participate in interest arbitration by order from this Court. Accordingly, DRPA may reserve the right to contest on appeal the imposition of interest arbitration even though it may stipulate to various aspects of the procedures to be employed in the interest arbitration.

The Court declines to decide whether the requirement to arbitrate benefit contributions and wages extends beyond the collective bargaining agreement presently at issue. This action involves injunctive relief. "Injunctions, which carry possible contempt penalties for their violation must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law." Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974) (internal quotations omitted). This action came before the Court when the parties failed to negotiate a successor to the CBA that expired in 2009. The Court's injunction will therefore be limited to that successor agreement. The Court will not issue a permanent injunction, particularly when DRPA's obligations could change if the bi-state compact is amended or if both states pass parallel

legislation specifically referencing the DRPA and its collective bargaining obligations or other terms of employment.[3]

Resolution of the remaining issues requires the Court to first examine the role of the courts in fashioning arbitration procedures. "[W]hen faced with a dispute involving labor arbitration, a federal court must first determine whether resolution of the disagreement is for the court or for an arbitrator to undertake." Bell Atl.-Pennsylvania, Inc. v. Commc'ns Workers of Am., AFL-CIO, Local 13000, 164 F.3d 197, 200 (3d Cir. 1999).

Courts differentiate between substantive arbitrability issues, which the court must decide, and procedural arbitrability issues, which the arbitrator must decide. A substantive arbitrability question is traditionally understood as a question of "whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance . . . ." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). Courts frame this question in terms of the collective bargaining agreement because, in most

_____

[3] Frankly, after years of difficulties litigating and adjudicating the complex issues of labor relations and employee rights under a bi-state compact whose states have divergent statutes on such matters, the Court would encourage attention by the New Jersey and Pennsylvania Legislatures and Governors to enacting parallel legislation with regard to DRPA employment.

cases, "arbitration is simply a matter of contract between the
parties; it is a way to resolve those disputes--but only those
disputes--that the parties have agreed to submit to
arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S.
938, 943 (1995). In this case, the parties' obligation to
arbitrate flows not from a contract, but from a court edict
interpreting their duties under the policies of the states which
are parties to the bi-state compact. The principle, however, of
having courts determine which issues should be arbitrated
remains apt: "It [i]s for the court, not the arbitrator, to
decide in the first instance whether the dispute [i]s to be
resolved through arbitration." AT & T Technologies, 475 U.S. at
651.

Issues of procedural arbitrability, on the other hand, are
for the arbitrator to decide. "Once it is determined . . . that
the parties are obligated to submit the subject matter of a
dispute to arbitration, 'procedural' questions which grow out of
the dispute and bear on its final disposition should be left to
the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S.
543, 557 (1964). The Third Circuit has cautioned that courts
must be circumspect in determining arbitration issues: "When a
court is called on to determine whether aspects of a dispute
arising out of a collective bargaining agreement are to be

14

determined by an arbitrator or by the court, judicial restraint
is an institutional imperative. Excessive judicial intrusion can
undermine arbitral expertise and authority." Indep. Ass'n of
Cont'l Pilots v. Cont'l Airlines, 155 F.3d 685, 696-97 (3d Cir.
1998).

There are therefore three key principles the Court must
apply in determining the framework for the court-ordered
arbitration: (1) the Court must decide which issues should be
decided through arbitration; (2) the arbitrator should decide
procedural questions; and (3) the Court must exercise restraint
and avoid intrusions into the arbitral process. With these
principles in mind, the Court now turns to the specific issues
presented by the parties.

**A. Healthcare Premium Contributions**

First, the parties dispute whether healthcare premium
contributions should be subject to arbitration. DRPA argues that
they should not be included because the laws of New Jersey and
Pennsylvania differ. Pennsylvania's arbitration statute does not
have any specific restrictions on healthcare premiums. The
statute merely states that police "have the right to bargain
collectively with their public employers concerning the terms
and conditions of their employment, including . . . pensions and
other benefits." 43 Pa. Stat. Ann. § 217.1. Under New Jersey

15

law, healthcare premiums are not subject to arbitration and are, instead, mandated by statute according to a sliding scale based on salary, with a minimum contribution of 1.5 percent of base salary. P.L. 2011 c. 78 §§ 39-44. As the Court explained in DRPA III, the DRPA I court did not base its ruling on identical statutes; its ruling reflected the basic public policy of each state that public employees are entitled to engage in collective bargaining. The February 13, 2013 Order [Docket Item 23] directed DRPA "to participate in binding interest arbitration with FOP to determine the terms and conditions of employment for the patrol officers, corporals, and sergeants whom FOP represents and whom DRPA employs." Benefit contributions are a term of employment, and the parties must arbitrate this issue. DRPA can present the New Jersey scheme as a proposal in arbitration if it so chooses, but the Court will not preclude this issue from arbitration because of statutory differences.

## B. Cap on Base Salary Award

The parties also dispute whether a two-percent cap should apply to any base salary award in arbitration. Pennsylvania law does not impose such a cap. New Jersey does impose this cap, but the cap does not apply to collective bargaining agreements that expired before January 1, 2011. N.J. Stat. Ann. 34:13A-16.7, 16.9. The last CBA between these parties expired in 2009. DRPA

argues that the Court should not "require the DRPA to engage in interest arbitration in the absence of such a cap." (DRPA Br. at 14.) As explained above, the parties must arbitrate the terms of employment, regardless of statutory differences. Wages are certainly a term of employment. The Court has determined that the issue of wages must be arbitrated, but the Court will not impose <u>a priori</u> any cap on the arbitrator's award, as the arbitrator can determine whether the award should be capped by law. It is for the arbitrator, and not this Court, to determine the effects of the New Jersey and Pennsylvania statutes on the outcome of the arbitration, and both sides are free to argue their positions to the arbitrator as in any other collective bargaining dispute.[4]

### C. Consideration of Salaries of Private and Non-FOP Employees

The parties dispute whether the arbitrator can consider the salaries of private employees or other, non-FOP DRPA employees. Pennsylvania law does not mandate any specific criteria for consideration. New Jersey law directs the arbitrator to consider relevant factors, which may include other private or public employees. N.J. Stat. Ann. § 34:13A-16(g). The Court will neither mandate nor prohibit any particular comparison as the

---

[4] Also, depending upon the award under consideration by the arbitrator, the two-percent New Jersey cap may or may not ultimately come into play as an issue.

17

arbitrator can determine the relevant referents. The parties are free to argue their positions to the arbitrator.

### D. Cap on Arbitrator's Fees

The parties also raised the issue of whether there should be a cap on arbitrator fees. Pennsylvania law does not impose a cap. 43 Pa. Stat. Ann. 217.8. New Jersey law mandates a $1,000 per day limit with the total cost of arbitration capped at $7,500. N.J. Stat. Ann. § 34:13A-16(f)(g). Counsel indicated at the hearing on May 31, 2013, that they believe the parties will be able to agree on a cap on fees but invited the Court's suggestions.[5] The Court will leave the fee issue to the parties in the first instance. If the parties are unable to agree, the issue of the arbitrator's fee must be decided by arbitration, as odd as that may seem. It would behoove the parties to agree upon the arbitrator's rates before entering the marketplace to select the arbitrator.

### E. Timeline for Arbitrator's Decision

Finally, the parties dispute the timeline for the arbitrator to issue a decision. FOP seeks a deadline 60 days

---

[5] The District of New Jersey sets a cap of $300 per hour for mediation of complex cases. Local Civil Rules of the District of New Jersey at Appendix Q ("Guidelines for Mediation") at ¶ IV.A. One should be concerned that limits of $1,000 per day or $7,500 total are unrealistic and inadequate for an arbitrator of the caliber necessary for this binding interest arbitration.

18

from the parties' submission of post-arbitration statements;
DRPA wants a deadline 60 days from the parties' selection of the
arbitrator. Pennsylvania has a deadline 30 days after the
parties select the third arbitrator (on a panel of three). 43
Pa. Stat. Ann. § 217.4(b). New Jersey has a deadline forty-five
days after selection of the arbitrator. N.J. Stat. Ann. §
34:13A-16(f)(5). The deadline question is clearly procedural and
the arbitrator should decide it if the parties are unable to
agree. Again, it would behoove the parties to agree to a
deadline before entering the marketplace to select their
arbitrator.

## IV. CONCLUSION

In sum, the Court decided substantive questions regarding
which issues should be submitted to arbitration and declined to
decide procedural questions that the arbitrator can determine.
The relevant holdings are: (1) the parties must arbitrate the
terms of FOP members' employment, including wages and healthcare
premium contributions; (2) the Court will not impose a cap on
wage increases or a restriction on comparators for the
arbitrator to consider, as those are issues for the parties to
argue to the arbitrator; (3) the issues of any cap on arbitrator
fees or the deadline for the arbitrator to issue a decision are

in the hands of the parties to agree upon, and in the absence of agreement these are to be arbitrated; (4) DRPA may include language specifying that it does not consent to interest arbitration and reserves the right to contest on appeal the imposition of interest arbitration; and (5) the requirement to arbitrate benefit contributions and wages extends to the collective bargaining agreement presently at issue, that is, the successor agreement to the CBA that expired in 2009.

The accompanying final Order is entered.


**July 18, 2013**                              **s/ Jerome B. Simandle**

Date                                           JEROME B. SIMANDLE
                                               Chief U.S. District Judge